**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHEENA TAYLOR,<br><br>                                    Plaintiff,<br><br>v.<br><br>STARBUCKS CORPORATION,<br><br>                                    Defendant. | Case No.:  3:24-cv-01511-RBM-MMP<br><br>**ORDER:**<br><br>  **(1) GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>  **(2) STAYING CASE PENDING ARBITRATION**<br><br>**[Doc. 9]** |

Plaintiff Sheena Taylor ("Plaintiff"), proceeding pro se, brought this action against Defendant Starbucks Corporation ("Defendant") asserting claims for racial discrimination, discrimination based on marital status, retaliation under Title VII, breach of employment contract, wrongful termination, intentional infliction of emotional distress, defamation, and invasion of privacy.  (Doc. 1 ("Complaint").)  Defendant responded to the Complaint by filing a Motion to Compel Arbitration ("Motion") based on an arbitration agreement that Plaintiff signed when she was hired by Defendant in September 2022.  (Doc. 9.)  Plaintiff

1

has filed an Opposition. (Doc. 11.) Defendant has filed a Reply (Doc. 12) and Plaintiff filed an unauthorized Sur-Reply (Doc. 13.)

The Court finds the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, the Motion is **<u>GRANTED</u>**.

**I.    BACKGROUND**

**A.    Complaint**

Plaintiff alleges that she "experienced racial discrimination throughout her employment with [Defendant]." (Compl. ¶¶ 8, 14.[1]) She also asserts Defendant's "recruiter engaged in a pattern of discriminatory behavior, including: … [i]mproperly sharing [Plaintiff's] personal information with another employee; … [m]arginalizing [Plaintiff] based on her single mother status; … [s]tereotyping [Plaintiff] by pressuring her to connect with another Black manager during relocation, whom [Plaintiff] had never met; [and] … [d]iscriminating against [Plaintiff] due to her unmarried status." (*Id.* ¶ 9.) She claims her employment offers were rescinded and she was terminated when she refused to comply with the recruiter's request that she "'group up' with the other Black manager" and did "not conform[] to stereotypical expectations." (*Id.* ¶¶ 10–11, 13.)

Plaintiff claims Defendant retaliated against her, including by pursing an invalid debt related to relocation benefits and falsely claiming she declined a job offer. (*Id.* ¶¶ 15, 20–22.) She also alleges Defendant's retaliation became increasingly aggressive after she filed with the United States Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 16.) The Complaint references emails, phone messages, and text messages that Plaintiff asserts contradict Defendant's position and support Plaintiff's claims. (*Id.* ¶¶ 20, 24–25.) Plaintiff attaches right to sue letters from the EEOC and California Civil Rights Department to her Complaint. (Doc. 1-2 at 3–5.) Plaintiff seeks compensatory damages of $5,000,000 for

---

[1] The Court cites the paragraph numbers of the Complaint and the CM/ECF electronic pagination for all other cites to the record unless otherwise noted.

3:24-cv-01511-RBM-MMP

lost wages and benefits, emotional distress, mental anguish, and damage to professional reputation; punitive damages of $200,000 for Defendant's "malicious and reckless conduct;" injunctive relief in the form of antidiscrimination policies and training; and attorney's fees and costs.  (Compl. Prayer at 6–7.)

### B.    Arbitration Agreement

Defendant's Motion details how Plaintiff set up and utilized Defendant's online application system to apply for jobs.  (Doc. 9-1 at 7–9 (citing Decl. of Marangwanda ("Marangwanda Decl.") ¶¶ 3, 6–9)).  Defendant also explains how, after receiving a job offer, Plaintiff used the same online system to consent to electronically sign documents and then electronically signed the Mutual Arbitration Agreement ("the Arbitration Agreement").  (Doc. 9-1 at 9–10 (completed the Arbitration Agreement task in the system by reading and then electronically signing it by entering last four digits of social security number) (citing Marangwanda Decl. ¶¶ 9–12).)  Plaintiff signed the Arbitration Agreement on September 12, 2022.  (*Id.* ¶¶ 13–14, Exs. F–G.)

Under the heading "Mutual Agreement to Arbitrate," the Arbitration Agreement states that:

> [Defendant] and [Plaintiff] agree to use binding individual arbitration to resolve any 'Covered Claims' that arise between [Plaintiff] and [Defendant] … . 'Covered Claims' are those brought under any statute, local ordinance, or common law relating to [Plaintiff's] employment, including those concerning any element of compensation, harassment, discrimination, retaliation, recovery of bonus or relocation benefits, leaves of absence, accommodations, or termination of employment.

(Marangwanda Decl. ¶ 13, Ex. F [Doc. 9-3 at 32].)  The Arbitration Agreement states that it is "enforceable under and subject to the Federal Arbitration Act, 9 U.S.C. Sections 1 *et. seq.*"  (*Id.*)

///

///

///

3

3:24-cv-01511-RBM-MMP

Defendant's counsel contacted Plaintiff numerous times after Plaintiff filed this action and requested she stipulate to arbitration pursuant to the terms of the Arbitration Agreement Plaintff signed on September 12, 2022.  (Decl. of Danielle Zobel  ("Zobel Decl.") ¶ 3, Ex. A [Doc. 9-2].)  Plaintiff did not respond. (*Id.*)

## II.    DISCUSSION

The Federal Arbitration Act ("FAA") provides that a written provision in "any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction …shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4."  9 U.S.C. § 2.  "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983)).  Any party bound to an arbitration agreement that falls within the scope of the FAA may bring a motion to compel arbitration.  9 U.S.C. § 4 (party aggrieved by refusal of another to arbitrate "may petition any United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement."); *see also* 9 U.S.C. § 3 (stay of case until arbitration is completed)).

The FAA mandates that "district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).  The Court must consider "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (citation omitted); *see also* 9 U.S.C. § 2.

///

///

3:24-cv-01511-RBM-MMP

### A.  A Valid Arbitration Agreement Exists

The Arbitration Agreement Plaintiff signed on September 12, 2022, as part of her onboarding, is a valid arbitration agreement between Plaintiff and Defendant.  As detailed above (*see* Section I.B), Plaintiff entered into the Arbitration Agreement after she accepted a position and electronically signed the Arbitration Agreement.  *See Chamber of Com. of the United States of Am. v. Bonta*, 62 F.4th 473, 488 (9th Cir. 2023) ("It has long been established that parties to a contract are generally deemed to have consented to all the terms of a contract they sign, even if they have not read it.").

Here, the Arbitration Agreement is valid because, as discussed further below, Plaintiff agreed to arbitrate any disputes with Defendant related to her employment and the Arbitration Agreement encompasses the claims Plaintiff raises in this case.  Plaintiff does not suggest she did not sign the Arbitration Agreement, rather she challenges its presentation to her and its terms as unconscionable.  However, the Arbitration Agreement is not unconscionable.  Additionally, Plaintiff's EEOC letter does not preclude Defendant's enforcement of the Arbitration Agreement, and Defendant did not waive its right to enforce the Arbitration Agreement by offering her a settlement before she filed this case.

### 1.  The Arbitration Agreement is Not Unconscionable

"Under California law, the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1013 (9th Cir. 2023) (citations omitted).  "For a court to refuse to enforce a provision due to unconscionability, a party must show the provision has elements of both procedural and substantive unconscionability." *Id.* (citations omitted).  Courts analyze unconscionability on a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required ... and vice versa." *Id.*

"[P]rocedural unconscionability addresses contract negotiation and formation and focuses on 'oppression or surprise due to unequal bargaining power.'" *Id.* (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 247 (2012)).  "A court may find oppression where unequal bargaining power 'results in no real

3:24-cv-01511-RBM-MMP

negotiation and an absence of meaningful choice' and surprise where 'the challenged term is hidden in a prolix printed form or is otherwise beyond the reasonable expectation of the weaker party.'" *Id.* (quoting *Grand Prospect Partners v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1347 (2015) and *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1321 (2005)).

The Court is not persuaded there was any surprise in the Arbitration Agreement. Plaintiff reviewed and signed the Arbitration Agreement as part of her onboarding process with Defendant and while she argues the Arbitration Agreement was buried amongst other documents (Doc. 11 at 2, 4–5), the Court is not persuaded that the inclusion of the Arbitration Agreement amongst other employment documents invalidates it, particularly given Plaintiff consented to signing documents electronically, and signed it by entering a portion of her social security number. (Marangwanda Decl. ¶¶ 11–13.) Additionally, the Arbitration Agreement was its own task in the online system (Marangwanda Decl. ¶¶ 12–13) and it is a separate document, with a heading in all caps and bold letters identifying it as an arbitration agreement (*id.* ¶ 13, Ex. F [Doc. 9-3 at 32]). The Arbitration Agreement is just over two pages and written in clear and concise language that explicitly states in bold that she and Defendant are waiving "the right to trial before a judge or jury in federal or state court." (*Id.*) While there may be some procedural unconscionability because the Arbitration Agreement was a precondition for employment, that alone is not sufficient to find the Arbitration Agreement invalid. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260–61 (9th Cir. 2017) (if employee must sign a non-negotiable employment agreement as a condition of employment but "there is no other indication of oppression or surprise" then "the agreement will be enforceable unless the degree of substantive unconscionability is high."); *see Bielski*, 87 F.4th at 1013 ("For a court to refuse to enforce a provision due to unconscionability, a party must show the provision has elements of *both* procedural and substantive unconscionability.") (emphasis added).

"Courts in California have used various standards for determining when an agreement is substantively unconscionable such as where the agreement is 'overly harsh,'

'unduly oppressive,' 'unreasonably favorable,' or 'shock[s] the conscience.'" *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1022 (9th Cir. 2024) (quoting *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 910–11 (2015)). "Unconscionability 'is concerned not with a simple old-fashioned bad bargain, but with terms that are unreasonably favorable to the more powerful party.'" *Id.* (quoting *Sanchez*, 61 Cal. 4th at 911).

None of the terms of the Arbitration Agreement fall into these categories or could be considered unreasonably favorable to Defendant. The Arbitration Agreement provides for a neutral arbitrator that issues a written arbitration award, adequate discovery, the same remedies available in court, and provides that any filing fee will not exceed what would be required in court up to a maximum of $225. (Marangwanda Decl. ¶ 13, Ex. F [Doc. 9-3 at 32–33]); *see Armendariz v. Foundation Health Psychcare Servs., Inc.* 24 Cal. 4th 83, 102–114 (Cal. 2000) (explaining lawful arbitration agreements: (1) provide for a neutral arbitrator; (2) provide for adequate discovery; (3) require a written arbitration award; (4) provide for the same remedies available to the employee in court; and (5) do not require the employee to bear more expense than they would to proceed in court). First, there is nothing in the Arbitration Agreement that would limit Plaintiff's ability to pursue her claims in arbitration. The Arbitration Agreement provides for reasonable discovery, including expansion of it by the arbitrator if needed. (Marangwanda Decl. ¶ 13, Ex. F [Doc. 9-3 at 33].) Additionally, while the "Covered Claims" are largely the types of claims an employee would bring against an employer, the Arbitration Agreement is mutual with the waiver of the right to trial applicable to both parties. (*Id.* ¶ 13, Ex. F [Doc. 9-3 at 32] ("[B]oth Starbucks and I waive the right to a trial before a judge or jury in federal or state court.").) Finally, the Court is not persuaded by Plaintiff's unsupported assertion that "[t]he arbitrator selection process unfairly favors [Defendant] as a repeat player in the arbitration system." (Doc. 11 at 6.) Plaintiff has not shown the Arbitration Agreement is substantively unconscionable.

///

3:24-cv-01511-RBM-MMP

Because there is only minimal procedural unconscionability based on the Arbitration Agreement being a precondition for employment and no substantive unconscionability has been shown, the Court finds the Arbitration Agreement is not unconscionable.

### 2. Arbitration is Not Precluded by Waiver or EEOC Letter

"[T]he test for waiver of the right to compel arbitration consists of two elements: (1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023) (explaining a third element, prejudice to the person opposing arbitration from the inconsistent acts, was eliminated by *Morgan v. Sundance*, 596 U.S. 411 (2022)). Because Defendant does not suggest it was unaware of its right to arbitration, the only issue is if Defendant engaged in intentional acts inconsistent with its right to compel arbitration. *Id.* Defendant did not. "'There is no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitrate; rather, [courts] consider the totality of the parties' actions.'" *Id.* at 471 (quoting *Newirth by & through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 941 (2019)).

Plaintiff argues Defendant waived the right to arbitrate when, prior to this litgation, it offered her a settlement that failed to sufficiently address the harm she suffered. (Doc. 11 at 7–8.) She asserts Defendant could have "invoke[d] arbitration during those discussions but strategically chose not to do so." (*Id.* at 7.) However, offering a pre-litigation settlement of Plaintiff's complaints to Defendant is not inconsistent with Defendant's right to arbitrate. The Ninth Circuit has found "this element satisfied when a party chooses to delay [its] right to compel arbitration by actively litigating [its] case to take advantage of being in federal court." *Hill*, 59 F.4th at 471 (quoting *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016) (summarizing cases finding waiver, including answering and moving to dismiss without asserting right to arbitration and conducting discovery and litigating motions without asserting a right to arbitration). Defendant's offer of settlement prior to Plaintiff's filing of this case was not inconsistent with Defendant's right to arbitrate and certainly was not done to take advantage of being in federal court

3:24-cv-01511-RBM-MMP

given this case had not even been filed. Defendant did not file a motion to dismiss or answer without asserting a right to arbitrate or attempt to pursue discovery or litigate any facet of the case other than its right to arbitration. Defendant's first filing in this case was the Motion seeking to enforce Defendant's right to arbitration.

Plaintiff seems to assert in Opposition that her receipt of a right-to-sue letter somehow negates the Arbitration Agreement she signed. (Doc. 11 at 9–10.) However, she cites no authority for this proposition. In Reply, Defendant notes that while Defendant could not compel the EEOC to arbitrate claims if the EEOC were bringing claims on Plaintiff's behalf, here the EEOC is not pursuing litigation on behalf of Plaintiff. (Doc. 12 at 10.) The Court finds Plaintiff's EEOC right-to-sue letter does not invalidate the Arbitration Agreement.

### B. The Arbitration Agreement Encompasses Plaintiff's Claims

Contrary to Plaintiff's arguments in her Opposition (Doc. 11 at 2, 8–9), all of Plaintiff's claims are encompassed by the Arbitration Agreement. As noted above (*see* section I.B), the Arbitration Agreement defines "Covered Claims" as those "brought under any statute, local ordinance, or common law *relating to* [Plaintiff's] *employment*." (Marangwanda Decl. ¶ 13, Ex. F [Doc. 9-3 at 32] (emphasis added).) Plaintiff's characterization of these claims as separate from her employment and outside the scope of the Arbitration Agreement because some are based on conduct that followed her termination or "involve third parties" is inaccurate. All of the conduct Plaintiff alleges Defendant engaged in as a basis for her claims was related to her employment because it was part of employing or relocating her for the position she accepted or followed directly from that employment-related conduct, i.e. disputes over relocation expenses or whether she later declined a job offer. To the extent that there could be any question these claims are related to her employment, the list of "Covered Claims" in the Arbitration Agreement, including particularly "retaliation [and] recovery of bonus or relocation benefits" makes clear that all Plaintiff's claims are covered by the Arbitration Agreement. (*Id.*)

///

9

### III.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Compel Arbitration (Doc. 9) is **GRANTED**.  This case is **STAYED** pending conclusion of arbitration pursuant to the terms of the Arbitration Agreement.  Within 14 days of the completion of arbitration proceedings, the parties shall jointly submit a report advising the Court of the outcome of the arbitration and request to dismiss the case or vacate the stay.

**IT IS SO ORDERED.**

Dated:  March 10, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

3:24-cv-01511-RBM-MMP